14

FILED
OCT 01 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Danny McClanahan and<br>Patricia McClanahan<br><br>Debtors. | Case No. 13-12860-B-7 |
| National Commercial Recovery, Inc., a California corporation dba Blair Smith and Associates,<br><br>Plaintiff,<br><br>v.<br><br>Danny McClanahan,<br><br>Defendant. | Adversary Proceeding No. 13-1052 |

**MEMORANDUM DECISION REGARDING COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Glenn A. Besnyl, Esq., appeared on behalf of the plaintiff, National Commercial Recovery, Inc., a California corporation doing business as Blair Smith and Associates.

Mark A. Zimmerman, Esq., appeared on behalf of the debtor/defendant, Danny McClanahan.

The plaintiff in this adversary proceeding, National Commercial Recovery, Inc., a California corporation dba Blair Smith and Associates (the "Plaintiff") seeks a determination that a debt owed by the defendant Danny McClanahan (the "Debtor" or "McClanahan"), evidenced by a final judgment from the Los Angeles County

Superior Court, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[1] Plaintiff's predecessor, Ned's House of Produce ("Ned's"), and the Debtor were both licensees under the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §§ 499a–499t ("PACA").[2] The underlying transactions were subject to the provisions of the statutory trust created by PACA ("PACA Trust" or "Trust"), and the Plaintiff contends that the judgment represents a debt caused by a fiduciary's defalcation of Trust property. On January 30, 2013, Ned's assigned the claim to the Plaintiff which thereafter pursued the underlying claim to judgment.

Ned's was a produce dealer that sold wholesale produce to the Debtor, a licensed produce broker. The Debtor resold the goods to third parties. The proceeds of the sales at issue in this adversary proceeding (the "Proceeds") were subject to the Trust, but the Proceeds were not used to pay Ned's.[3]

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[2] In its action making a final rule in the legislation amending PACA, the Agency explained, "The purpose of the Perishable Agricultural Commodities Act ("PACA" or "the Act"), 7 U.S.C. 449a-499s, is to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce. The Act provides a code of fair play in the marketplace, and provides aid to traders in enforcing their contracts."

[3] 7 CFR § 46.46 states, in pertinent part: (2) "'**Dissipation'** means any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."

"**(b) Trust assets.** The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated "floating" trust. Commingling of trust assets is contemplated."

"**(d) Trust maintenance.** (1) Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in

Plaintiff now contends that the Debtor's failure to pay Ned's constitutes a defalcation by the Debtor while acting in a fiduciary capacity. After the completion of discovery the parties stipulated to submit this adversary proceeding for a resolution, without a trial, based on declarations and admissible evidence. Because the undisputed facts do not show that the Debtor failed to pay Ned's with a "culpable state of mind" within the meaning of the U.S. Supreme Court's definition of "defalcation" (*Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013)), judgment will be entered in favor of the Defendant.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 523, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

**BACKGROUND AND FINDINGS OF FACT.**

The following facts are either admitted in the Debtor's responsive pleading or supported by declarations lodged with the court, or appear on the Debtor's schedules:

**The Bankruptcy Proceeding.** This bankruptcy commenced with a voluntary chapter 7 petition filed by McClanahan and his wife on April 23, 2013. Prior to the bankruptcy, Ned's and McClanahan, fdba McClanahan Produce Trucking, had been engaged in commercial transactions for an unspecified time period. The Debtor's Statement of Financial Affairs shows that McClanahan Produce Trucking had been in business from January 1992 until January 2013. At the time the bankruptcy was filed,

---

violation of section 2 of the Act, (7 U.S.C. 499b) (emphasis added, defining 'Unfair Conduct')."

the Debtor owed Ned's approximately $48,899.95, listed on Schedule F as "Business Expense," for agricultural products purchased during a three-month period between January 2012, and April 2012. On Schedule B, the Debtor listed an account receivable from Wills Fresh Foods in the amount of $44,528.19 for product sold by McClanahan during roughly the same period that McClanahan was buying produce from Ned's.[4] The Debtor exempted modest household goods and two automobiles worth $7,000. The Debtor has no interest in any real property, pension funds, retirement accounts, or life insurance.

The Debtor's unsecured business debts, exclusive of those owed for produce, totaled approximately $184,000. Not included in this amount are a mortgage deficiency in the amount of $167,056 following a short-sale of the Debtor's residence in February 2013, and an unknown deficiency from the voluntary surrender of five semi-trucks and various trailers in 2012. The Debtor also listed approximately $74,300 of what appears to be produce-related debt in addition to the debt owed to Plaintiff.

The Debtor states his occupation, in Schedule I, as "Truck Driver" for Northwest Transport Service for a period of one month prior to filing the petition. He reports a gross income of $4,000 per month, an amount similar to the income the Debtor reported from McClanahan Produce Trucking for the two years prior to the bankruptcy case. The Debtor's current net income is reported as negative $163 per month. The Debtor's wife is not employed. The Plaintiff's suit against the Debtor is the only lawsuit involving the Debtor filed within the year prior to the case.

**The Adversary Proceeding.** The Plaintiff timely commenced this adversary proceeding on May 9, 2013. The operative pleading is the second amended complaint (Doc. No. 45; the "Complaint") in which the Plaintiff contends that a portion of its

---

[4] The Wills Fresh produce receivables relate to transactions between March and July.

judgment against McClanahan is nondischargeable.[5] The Plaintiff seeks relief based on the following undisputed facts: Both McClanahan and Ned's were PACA licensees; the transactions at issue were subject to PACA and its regulations; McClanahan did not pay Ned's for the goods received in these transactions.

To invoke the statutory protection available under PACA, the seller of agricultural products must strictly comply with its requirements. In this case, one of the relevant issues is, whether Ned's perfected its status as a beneficiary under a PACA Trust by complying with the "Invoice Notice Method." The Debtor argues that Ned's did not properly perfect those rights.

The Plaintiff submitted evidence that Ned's ordinary office procedure for mailing invoices and PACA notices was as follows: First, Ned's mailed invoices to its customers that did not contain the necessary PACA language (the "E-mailed Invoices"). McClanahan printed the E-mailed Invoices and returned them to Ned's with his handwritten notations on them. Upon McClanahan's approval of the E-mailed Invoices, and within 30 days of the date payment was due, Ned's mailed printed invoices with the PACA language.[6] This evidence was submitted in the form of declarations by Thad Schamberger (Schamberger Declaration), the owner of Ned's and the "person responsible for the supervision, custody and control of the books and records of the receivable business accounts," who was "personally involved in the transactions and handled all the sales to McClanahan Produce." Schamberger Decl. 2:9-10, May 1, 2014.

///

---

[5] On April 23, 2013, the same day that this bankruptcy was filed, the State court entered a default judgment against McClanahan in the amount of $58,567.35. (Compl. Ex. A.) However, the parties have stipulated to reduce the amount at issue in this adversary proceeding to $40,874.35, after McClanahan provided evidence to show that he did not receive payment for one shipment of produce purchased from Ned's.

[6] Ned's principal's declaration explained that he had not been able to find a way to include the language on the E-mailed Invoices.

> For each transaction with McClanahan Produce, two (2) separate copies of each invoice were sent to Danny McClanahan, one with the PACA language at the bottom and the other without. After an order was processed and an invoice created in Quick Books, a copy of the invoice was first e-mailed directly to Danny McClanahan which would serve to confirm the specific type of produce to be delivered, the corresponding prices and quantities, and the promised date of delivery. Mr. McClanahan would then review the e-mailed invoice and e-mail it back to me with his approval (he would write "OK" on the invoice that he sent back to me). True and correct copies of the e-mailed invoices after approval by Mr. McClanahan are attached hereto as Exhibit "C."

Schamberger Decl. 2:21-28.

The Plaintiff did not submit testimony from anybody who personally printed invoices for the disputed transactions and who were actually put them in first class mail properly addressed to McClanahan. However, it did submit corroborative declarations and documentary evidence of Ned's practice from four other customers. The circumstances of the unrelated transactions, and Ned's transactions with McClanahan, differed slightly in three of the unrelated cases. In all of the McClanahan transactions at issue, Ned's shipped directly to McClanahan's customers. Those invoices contained two different addresses: McClanahan's "Bill To" address, and the end customer's "Ship To" address. In contrast, in three of the four unrelated cases the addresses were the same, showing that Ned's shipped to its own customer.

In response to this evidence, both the Debtor and his wife submitted declarations that they never received any invoices by mail from Ned's. According to their declaratory and documentary evidence, their normal practice was to receive the E-mailed Invoice, which would be checked for accuracy, and returned to Ned's. Subsequently, the produce would be shipped, and payment would be remitted with a copy of the E-mailed Invoice.

///

///

**ISSUE PRESENTED.**

On March 26, 2014, the parties filed a joint status report (Doc. No. 59) in which they agreed that the only remaining disputed factual issue is whether Ned's properly perfected its PACA Trust rights by mailing invoices to the Debtor which included the statutory language required under 7 U.S.C. § 499e(c)(4). "[Debtor] contends he only received copies of the invoices by e-mail and that the invoices he received did <u>not</u> contain on their face the statutory trust language required under 7 U.S.C. § 499(e)(c)(4)." (Doc. No. 59 at 2.)

The Plaintiff's argument assumes, based on pre-*Bullock* case law, that a PACA based liability is strictly nondischargeable if the Plaintiff can simply show that the PACA Trust was properly perfected and preserved. In other words, the Plaintiff essentially contends that a fiduciary's failure to pay a PACA liability is a *per se* defalcation of Trust property. However, based on *Bullock*, the term "defalcation" now requires the court to make a specific finding regarding the Debtor's "culpable" state of mind. Even though the parties did not designate the state of mind as a disputed issue, the court must still review the undisputed facts to determine if they support such a finding.[7]

**DISCUSSION AND CONCLUSIONS OF LAW.**

**<u>The Dischargeability Exception under § 523(a)(4).</u>** To balance the fresh start offered to honest but unfortunate debtors through a discharge of debts, the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Here, the Plaintiff does not contend that the Debtor's use of the PACA Trust funds constituted

---

[7] The bankruptcy case was filed April 23, 2013. The adversary proceeding was filed May 9, 2013. The *Bullock* decision was decided on May 13. At the status conference on October 24, 2013, the court asked Plaintiff's counsel how the recent *Bullock* decision might affect its case. The court dismissed the complaint with leave to amend to address, *inter alia*, the *Bullock* issues.

embezzlement or larceny. Although there is a factual dispute over perfection of the PACA Trust in Ned's invoices, the court may assume for purposes of this decision that the Trust was properly perfected and that the Debtor was a fiduciary with regard to the Proceeds he received from the sale of Ned's produce. The Debtor's obligation to Plaintiff is still dischargeable unless his use of those Proceeds constituted a "defalcation." The Plaintiff has the burden of proving the elements of its dischargeability claim by a preponderance of the evidence. *Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 713 (9th Cir. BAP 1999).

Prior to *Bullock*, bankruptcy courts generally concluded that a debtor's breach of a PACA Trust constituted a "defalcation" within the meaning of § 523(a)(4) without regard to the debtor's state of mind. Some courts applied a strict liability standard for defalcation of trusts to which § 523(a)(4) was applicable, including PACA Trusts. *In re Bartlett*, 397 B.R. 610, 621-22 (Bankr. D.Mass. 2008). However, in a minority of decisions some courts used a variety of reasoning to conclude that a PACA claim was not excepted from discharge. For example, in *In re McCue*, the court decided that PACA trusts, as non-segregated, floating trusts with funds available to be used for other purposes, were not the type of "strict liability" trust subject to § 523(a)(4). *In re McCue*, 324 B.R. 389, 392-93 (M.D. Florida 2005).

In *Hermes v. Sun Pacific Marketing Cooperative, Incl,* (Not Reported in F.Supp.2d, 2005), 2005 WL 1593441 (W.D.Tex, 2005), the bankruptcy court found a PACA claim was nondischargeable, however made no finding of intent. On appeal the court distinguished *liability* in a non bankruptcy case, with *dischargeability* in the bankruptcy context. The *Hermes* court said, "The Bankruptcy Court correctly noted that defalcation does not have to be intentional. However, the Fifth Circuit requires a finding of at least willful neglect or recklessness to establish defalcation." Because the bankruptcy court made no determination of that issue, the case was remanded for "further proceedings on the question of [the debtor]'s mental culpability with respect

to the . . . PACA trust." *Id.* at *3-*4.

Before the *Bullock* decision, the courts struggled to define the term "defalcation," frequently ruling that any use, or misuse, of trust funds by the fiduciary, outside the scope of the trust, could be a defalcation. However, in *Bullock*, the Supreme Court raised the standard, ruling that "defalcation" within the meaning of § 523(a)(4), requires a "culpable state of mind . . . one involving knowledge of, a gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S.Ct. at 1757.

One bankruptcy case following *Bullock* has applied the new standard for defalcation to PACA claims cases. In *H. Brooks and Company, LLC v. Yerges (In re Yerges)*, slip copy, 2014 WL 1803395 (Bankr. W.D. Wis.), the court addressed this issue. In a state court civil action, summary judgment was entered for the plaintiff on its claim that the defendant corporation had violated its PACA trust obligation by not paying the plaintiff, ceasing operations, liquidating its inventory, and paying the proceeds to its primary lender. The court had not, however, made findings as to the defendant corporation's principal, evidently because he was in bankruptcy. The plaintiff filed a dischargability action in the bankruptcy court against the debtor/principal on the PACA claim. The debtor's motion to dismiss the adversary proceeding was denied by the court, which said that the debtor could be held personally liable for the debt owed "from the PACA trust assets and the failure to preserve or satisfy the obligations," since there was no dispute that the debtor was the sole person in control of the company.

The plaintiff then filed a motion for summary judgment on the undisputed facts, that the company failed to pay for the shipments, and the debtor was personally liable, arguing that the debtor's personal liability for the debt was nondischargeable under § 523(a)(4). The bankruptcy court denied the plaintiff's motion because the undisputed facts were not dispositive. Relying on *Bullock*, it wrote, "The Plaintiff

apparently does not dispute that the Defendant *did not* commit fraud for the purposes of section 523(a)(4). Instead, the crux of the claim is the interpretation of the term 'defalcation' in the context of fiduciary duties arising under a PACA trust." *Id.* at *6 (emphasis added). The court said that, for the purposes of § 523(a)(4), and pursuant to the authority of *Bullock*, whether the fiduciary duties were created by PACA or by common law trust principles was irrelevant; defalcation requires scienter.[8]

**Application to the Undisputed Facts.** Here, the only undisputed facts before the court which might have any bearing on the Debtor's state of mind are set forth in paragraph 9 of the Complaint (Doc. No. 45 at 3), which reads:

> The wholesale produce in question that was purchased from Ned's House of Produce by DANNY McCLANAHAN d/b/a McClanahan Produce was accepted without complaint and resold to third-party buyers, but the sale proceeds were used for purposes other than repayment to Ned's House of Produce. *DANNY McCLANAHAN's decision to use the sale proceeds for purposes other than repayment to Ned's House of Produce was an intentional and/or reckless decision* which was a breach of the trust obligations imposed upon him by PACA.

*Id.* (emphasis added).

The factual allegations in paragraph 9 were admitted in the Debtor's responsive pleading, so the court must accept them as true. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotation marks omitted). A judicial admission is conclusively binding on the party who made it. *Id.* However, the court is not required to draw any inferences from the admitted allegations beyond

---

[8] Subsequently, a trial was held and on July 2, 2014, the court entered judgment for the plaintiff, determining that the debtor had possessed the ability to pay the PACA Trust fund debts but had chosen instead to liquidate the assets of the corporation and to pay on the debts, *inter alia*, that he had personally guaranteed. *In re Yerges*, 512 B.R. 916 (Bank. W.D.Wis. 2014).

their plain language.

The fact that the Debtor used the Proceeds "for purposes other than repayment of Ned's House of Produce" does not establish that he used them wrongfully. The PACA Trust is a floating trust. The Debtor had an obligation to pay Ned's within the terms of their agreement, but he was not obligated to use the exact same Proceeds he received from sale of the produce to do so. The Debtor was in the produce business. He was buying and selling produce from multiple sources. He had other business expenses to pay. In the Agency's own description, the floating PACA Trust assets are available for other uses by the buyer; they may be used to pay other creditors so long as the buyer ensures that there are sufficient assets to assure prompt payment to the PACA beneficiary seller.[9]

Here, there is absolutely no evidence to show when the Debtor received the Proceeds from the goods he ordered from Ned's. There is no evidence to show what he did with those funds once they were received. There is no evidence to show that he had the ability to pay Ned's once the bills came due in 30[10] days or that he used the Proceeds for any improper purpose. The record shows that the Debtor has modest assets and a modest lifestyle. He sold his home and filed bankruptcy because his business failed. It does not appear that he used the Proceeds for extraordinary personal expenses, such as a horse ranch. *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001) (debtor's failure to pay plaintiff's wages was held to be

---

[9] See, in pertinent part, 49 FR 45735-01, 1984 WL 134664 (F.R.) Rules and Regulations, Department of Agriculture, Agriculture Marketing Service, 7 CFR Part 46, Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions To Effect a Statutory Trust, Tuesday, November 20, 1984. Action: Final rule. Summary. "Trust assets are available for other uses by the buyer or receiver. For example, trust assets may be used to pay other creditors. It is the buyer's or receiver's responsibility as trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment, including sufficient assets to cover the value of disputed shipments."

[10] Although the invoices give a due date of 21 days, without prior agreement those terms are void and the due date reverts to the default 30 days.

nondischargeable under § 523(a)(6) in part because the debtor had the ability to pay the wages, but instead used the money for extravagant expenses, such as a horse ranch). In addition to Ned's, he had other debts to pay, including other produce-related debts that may have been PACA claims themselves. The Plaintiff has the burden of proof, and, in short, there is no evidence upon which the court can make the requisite finding that the Debtor's use of the PACA Trust funds involved bad faith, moral turpitude, immoral conduct or some other intentional wrong. *Bullock*, 133 S.Ct. at 1759.

The Plaintiff relies on the admitted, but equivocal, allegation in the Complaint at paragraph 9, that the nonpayment of Ned's was "intentional and/or reckless," as support for its contention that the *Bullock* definition of "defalcation" has been satisfied. However, reference to the Debtor's conduct as "reckless" is a legal conclusion which the court does not have to accept as true. "To qualify as a judicial admission, the admission must be deliberate, clear, and unequivocal." *Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., L.P.*, 537 F. Supp. 2d 1126, 1135 (D. Idaho 2008) (internal quotation marks omitted). Further, "[j]udicial admissions apply only to factual statements, not statements of law." *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 32 n.3 (9th Cir. 2007). In other words, judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories." *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 377 (3d Cir. 2007); *accord Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (stating that "legal conclusions are rarely considered to be binding judicial admissions"). "[A] court is not obliged to accept a proposition of law simply because one party elects not to contest it." *Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010). Ultimately, the "trial judge has discretion whether to accept a judicial admission." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

The admitted statement in paragraph 9, that the Debtor's decision not to use the Proceeds to pay Ned's was "intentional and/or reckless," is clearly a legal conclusion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (reasoning that plaintiff's allegations that defendants "'knew of, condoned, and willfully and maliciously agreed to'" subject plaintiff to harsh conditions of confinement "amount[ed] to nothing more than a 'formulaic recitation of the elements'").

The Complaint is devoid of any facts, other than the statement that the proceeds were used for other purposes, from which the court could find or even infer what the Debtor actually did with the PACA Trust funds during the final months of his business. The Debtor's admission that his "other purpose" use of the Trust funds was "intentional" is nothing more than an acknowledgment he knew Ned's was not getting paid from the floating Trust. Again, the second sentence at paragraph 9 in the Complaint is insufficient to show, by a preponderance of the evidence, that the Debtor's use of funds in the floating PACA Trust for purposes other than payment of Ned's when those bills came due, rose to the level of "defalcation" within the meaning of *Bullock*.

**CONCLUSION.**

Based on the foregoing, the Plaintiff has not offered sufficient evidence to prove, by preponderance of the evidence or otherwise, the requisite "defalcation" element of its nondischargability claim. Accordingly, judgment will be entered in favor of the Debtor.

Dated: September 30, 2014

W. Richard Lee
United States Bankruptcy Judge

# Instructions to Clerk of Court

**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _X_ Other Persons Specified Below:

Glenn A. Besnyl, Esq.
Attorney at Law
750 N. Diamond Bar Blvd. #104
Diamond Bar, CA 91765

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721